## SAMUEL DIMON, Plaintiff in Error, *v.* THE PEOPLE, Defendant in Error.

### ERROR TO PEORIA.

On the trial of an indictment for obstructing a highway, the existence of the highway may be proved by prescription from user. And unless it is assumed by the pleadings, documentary proof of the location of the highway, is not indispensable.
A highway may be legally laid out and established by public use, and recognition of it by the proper authorities, and by acquiescence; and this, without regard to governmental or individual ownership of the land across which the road runs.

COPY of indictment:

"Of the September term of the Peoria County Circuit Court in the year of our Lord 1853.

"The grand jurors chosen, selected and sworn, in and for the county of Peoria aforesaid, in the name and by the authority of the people of the State of Illinois, on their oaths, present, that Samuel Dimon, late of the county of Peoria aforesaid, on the thirteenth day of June, in the year of our Lord one thousand eight hundred and fifty-three, at and within the county of Peoria aforesaid, in and across a public road leading from the city of Peoria and county of Peoria aforesaid, to the city of Knoxville, in the county of Knox, and State of Illinois, on the north-west quarter of section ten, in township nine north of the base line, and range seven east of the fourth principal meridian, then and there did unlawfully, with force and arms, erect and build a fence, thereby then and there obstructing the said public road, and then and there by said fence and obstruction, rendering the said public road inconvenient to pass, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same people of the State of Illinois.

E. G. JOHNSON, *State's Attorney.*"

Plea, not guilty.

The following evidence was offered on the trial:

*Elias Vickory*, called by People, stated that for the last nine years he had known a road to be traveled across the N. W. qr. Sec. 10, 9 N. 7 E., 4 P. M. Said road continued on west to Brimfield and Knoxville, and east to Peoria; that there were

several traveled tracks across the quarter section, but one was more traveled than the others and was the main traveled track; that there is now a fence across said main track. It was put there sometime in April or May last. Dimon told him he was going to build a fence there, but he did not know who put it there; Dimon lived on the land inclosed by the fence; that as supervisor he had worked on the road about two miles east, and — miles west of this land, near ten years since. No work had been done on this quarter; it was prairie land, it needed none.

*Henry McFadden* stated that he surveyed a road across the quarter section on which defendant lives, (N. W. 10, 9 N., 7 E.,) in 1850. There was, at that time, a main traveled track there; the road I surveyed run diagonally across this main traveled track, at east side of the land; the traveled track was eight to twelve rods north of the road I surveyed; that there was several traveled tracks on the quarter section, one more traveled than the others.

*Matthew Craig* testified that he had known a traveled road over said land seventeen years, running rather east and west; that there was one main track, and others not so much traveled; that a fence had been built across said main track which, at the east line of the quarter, diverts the travel from two to four rods from said main track. (To all the evidence offered to prove the existence of a public highway, by testimony, that it had been used and traveled as such, the defendant objected when the same was offered.) The court overruled the objection and admitted the evidence.

Here the people rested, and stated that they had closed their evidence in chief.

The defendant then called *Charles Kettelle*, who testified that he was clerk of the county court; that he had made thorough examination of the records and files in his office, where the records and files relating to roads are kept, and that, upon such examination, he could not find the record of any road leading from the city of Peoria to the city of Knoxville, and that he believed no road of that description, or title, had ever been laid out and established.

*Thomas N. Wells*, defendant's witness, testified, he had known land on which defendant lived several years; there had been several traveled tracks across the same, extending over fourteen or fifteen rods in width; some traveled more, some less, depending much on the season of the year, weather, &c. Fence is from two to four rods from one of the traveled tracks. Road, as now traveled, is a better road and on better ground than the old track.

*Levi Williamson*, defendant's witness, testified that there were

a good many tracks traveled across the land—could not say how many; that at the east end or side of the quarter, the fence stands nearly in the middle of one of the main traveled tracks.

Defendant then offered to prove that the N. W. qr. Sec. 10, 9 N., 7 E., in Peoria county, was patented by the United States to Zera King, on the 10th January, 1818; that on the 27th November, 1818, Zera King conveyed the same to Norman Nicholson; that on the 15th July, 1824, Nicholson conveyed the same to Jacob B. Farr, and that on the 30th July, 1849, Jacob B. Farr conveyed the same to Nancy Dimon, who was then and still is the wife of the defendant, and that during all the time said road was used and traveled as a road or highway, said King, Nicholson and Farr were non-residents of the State of Illinois, and that they, nor either of them, had ever received any compensation, or damages, for the using, occupying said land for the purposes of a road or highway. Evidence excluded, and exception taken.

The people then offered in evidence, for the purpose of rebutting the evidence of the defendant, a petition which, among others, was signed by defendant, for the appointment of viewers, report plat and survey, and order of the County Commissioners' Court of Peoria county, establishing a regular legal surveyed highway " *from the foot of the bluff opposite the head of Main street, in the town of Peoria, by way of Kickapoo town to the town of Charleston, in said county,*" which said road, as surveyed and established, passed nearly east and west across said quarter section before described. Established April 15, 1842.

For the same purpose of rebutting the defendant's evidence, the people called *George C. McFadden*, who testified that on the 10th of April, 1842, he surveyed said last mentioned road over said land; that the west line of the surveyed and traveled track are nearly the same place, but he did not know certain; that the residue of the surveyed road and traveled track, were not the same; that the traveled track was generally south of the surveyed road.

*Henry McFadden*, called for same purpose, testified that the road he surveyed over the said land, crossed the traveled track over the same, nearer to the east than the west line; that the fence built on the land crossed both the surveyed road and traveled track, whether at the same place he could not state.

*Jeremiah Brown*, called for same purpose, *rebutting*, stated, he was present when Henry McFadden surveyed said road, and that the fence on said land crossed the traveled track, and also the line of the surveyed road, whether at one and the same place he could not distinctly state.

*Jacob Wells*, called for same purpose, *rebutting*, testified that

the fence on said land crossed both the traveled track and the surveyed road at the same place.

This evidence was objected to, but it was admitted as rebutting evidence only.

People again closed their testimony.

Defendant then offered to prove that at the time said surveyed road was laid out and established over said quarter section of land, the land was owned by Jacob B. Farr, who was a citizen and resident of the State of New York, and had no notice of any proceedings in relation to the location or establishment of said road, and that no damages whatever were ever assessed or paid, upon, or before or after the location or establishment of the said road over said land, nor no compensation whatever was ever paid for locating or establishing said road over the same ; also, that on the 30th July, 1849, said Jacob Farr by deed conveyed the said land to Nancy Dimon, the wife of the defendant, and that she is still the owner of the said land under said conveyance.

The evidence was excluded, and defendant excepted.

The following instructions given at the request of the people are objected to:

"If the jury believe from the evidence, that defendant did fence up and obstruct *a* public road at the place alleged in the indictment, so as to prevent passing on the same, and that said road so obstructed at any place or part of the obstruction, was a legal public road, they will find the defendant guilty, whether there may be another track in the vicinity equally as good and convenient to be traveled."

"That in considering this case it is proper for the jury to examine the *reasons* and papers offered in evidence; and if the jury find from such evidence, and the testimony of witnesses in the case, that there was a public road running from Peoria to Knoxville, on the quarter section mentioned in the indictment, and that defendant has any where on the line of said road on said quarter, fenced the public travel from the same, they will be justified in finding the defendant guilty."

"That it is not necessary, for a verdict for the people in this case, to prove a legally laid out road all the way from the city of Peoria to the city of Knoxville; but only necessary to prove that the road obstructed was a legal public road on the quarter section mentioned and charged in the indictment."

"It is no justification whether the public have been put to inconvenience or not by the obstruction; provided the *legal highway*, at the *place* charged, was obstructed so as to prevent public travel on the same."

"If a road is used and traveled by the public as a highway, and is recognized and kept in repair as such by the county

commissioners and supervisors, whose duty it is by law to open and repair public roads, proof of these facts furnishes a legal presumption, liable to be rebutted, that such road is a public highway."

The following instructions by defendant were refused:

"That no legal public road or highway can be laid out in this State, and established as such, unless there has been a petition in due form of law presented to the proper court, and viewers appointed to view the same, a location of the said road by such viewers, a report by them in favor of said road, and an order of the proper court or authority establishing the same."

"That unless they believe from the evidence that a road, or highway, leading from the city of Peoria to the city of Knoxville, as described in said indictment, has been legally laid out and established, in the manner mentioned in the first instruction, they will find the defendant not guilty."

"That unless the people have proved that there was a legally laid out road from *Peoria to Knoxville,* as charged in the indictment, they must find the defendant not guilty."

"That unless the jury believe from the evidence that the track mentioned by the witnesses, was a legally laid out and established public highway, and that the defendant by building a fence across the same obstructed said highway, they will find him not guilty."

"That private property cannot be taken for public use without just compensation to the owner; and that if they believe from the evidence that a road has been laid out or traveled over the land described in the indictment, without the knowledge or consent of the owner of the same, and that he has had no notice of the establishment of any such road either actual or constructive, such traveling over, or laying out said road as to such owner is a nullity, and he or any other person on his behalf, may lawfully fence up the same."

"There is no evidence before the jury of any actual survey and location of a road through the land described in the indictment, upon which the defendant, in this case, can be convicted."

"That the record evidence introduced in this case is not to be considered, by the jury, for the purpose of establishing the fact of the survey and location of a road, but only to rebut the evidence given by the defendant."

There was a verdict of guilty by the jury. Motion for a new trial denied. The cause was tried at November term, 1853, of the Peoria Circuit Court.

N. H. PURPLE, for Plaintiff in Error.

W. H. L. WALLACE, District Attorney, for The People.

Scates, C. J. The indictment charges specifically, that the *locus in quo*, the obstruction, was put, was across the highway, on a specified quarter section, and the name given to the highway, as one leading from Peoria to Knoxville, is no essential part of the description, either of the highway, or of the place obstructed. It might be stricken from this indictment without surprise to the plaintiff, or vitiating the pleading for want of certainty. The proof, however, sustained the allegation as it is, for one witness testified to the fact, that the highway mentioned, does lead from the one city to the other. But the defence, very erroneously, was predicated in part, upon the supposed necessity of the people proving, under the allegation, the laying out and establishment of one and the same continuous line of road, from the one to the other city, and known by that description. It was for this purpose we understand the county records and clerk were offered to disprove the fact of the existence of any such road.

We are not able to sympathize with, or encourage the numerous efforts that are making to overturn and destroy the public used highways, through the various counties of the State, by exceptions to the loose and imperfect minutes, records and files, kept by the Commissioners' Courts, in the early locations of roads through a new and sparsely settled country. We shall indulge no nice, stringent or technical criticisms upon these, when in evidence, to aid in closing up used highways, nor shall we confine the evidence to this mode of proving a highway, unless it is assumed by the pleadings, but will allow resort to the usual modes of proof, by prescription from user, and dedication, in addition to documentary proof. The allegations here do not call for documentary proof.

Documentary and parol proof were offered, from which the jury might have found the establishment of a highway at the place obstructed, or might have drawn inferences of a dedication by the owners of this tract, knowing and acquiescing in its use by the public, as such. *Alvord* v. *Ashley*, 17 Ill. R. 363. The road was petitioned for by plaintiff. It was opened in 1842, and openly and notoriously used and worked on as such, and as far as could be, was in the actual occupation and possession of the public, for that purpose, and claimed as such. We can make no distinction between governmental and individual ownership, nor between non-resident and resident proprietors, as to the operation and effect of such occupancy, claim and user upon their respective rights. They are presumed to have, and must alike take notice at their peril. The power of the government to establish highways, and acquire easements on the land for that purpose, is paramount to the public or private own-

ership of the soil, without respect to the character of the proprietor.

The patentee and his vendees made no objection, and asked no damage. In 1849 the land was conveyed to plaintiff's wife, and still we hear no complaint, until April or May, 1853, when instead of asking an assessment of damages, he closed up the highway by a fence. If upon the settling of the country, and the inclosure of the wild lands, it be found, that the early laid highways are injuriously and inconveniently laid, the proper remedy is by application to the county courts or township boards, who may have the authority, not only to open, and vacate, but to relocate the whole, or particular portions.

The evidence of non-resident proprietorship, was therefore properly excluded. That offered as rebutting by the prosecution was properly admitted, and the jury were justified in giving to it its due weight not only as rebutting, but in establishing the prosecution. This is not of that class and character that would confine its application to rebutting alone, because the court might refuse to open the case for it in chief. The instructions given for the prosecution are correct, and those refused to the plaintiff should not have been given. We might presume that their true intent was in accordance with the positions assumed in the others refused, and this was doubtless the view taken of them by the court below, and in that sense their rejection was proper.

A highway may be legally laid out and established by public use, and recognition of it by the proper authorities, which is sufficiently evidenced by ordering it to be, and having it worked on and repaired, when so laid out and established with the express or implied assent of the owner of the land, or the assessment and payment of damages. And juries may infer a dedication from length of user, and from acquiescence by the owner. But while no presumptions or inferences can be made against those who have neither actual or constructive notice of such user, every one is presumed to know of and notice such use of a way over his land. *Warren* v. *Trustees of Jacksonville*, 15 Ill. R. 240–242; Greenleaf Ev., Sec. 662, and notes.

*Judgment affirmed.*