12  104
44  343
12  104
53  173
12  104
114m 672

Board of President and Directors of St. Louis Public Schools, Respondent, *v.* Estate of Broadway Savings Bank, Appellant.

April 18, 1882.

1. The cause of action accruing to a bank against its cashier for wrongfully permitting an overdraft arises on contract, within the meaning of the statute relating to counter-claims.

2. The pendency of a suit by the bank against the cashier for this breach of his bond, does not affect the bank's right to set up the overdraft as a counter-claim to a demand by the cashier's assignee.

3. A counter-claim may be made to a claim by the debtor's assignee in the circuit court, though it has not been pleaded before the assignee.

4. An assignee's statutory power to adjust and allow claims confers no larger power in relation to counter-claims than that given to the courts.

Appeal from the St. Louis Circuit Court, Lindley, J. *Reversed and remanded.*

John D. Davis, for the appellant: " Demands ascertained, or depending upon mere computation, may be set-off."—Waterman on Set-off, sect. 304. "Damages arising from the non-fulfilment of a contract to make the demand, and give the notice requisite to fix the liability of the indorser of a note, may be set-off in an action brought against the owner of the note upon another note of which he is the maker."— Waterman on Set-off, sect. 307; *Bidwell* v. *Madison*, 10 Minn. 13. If the claim of the bank against Krieger, Jr., could by any possibility be considered unliquidated damages, the assignee could, nevertheless, use it as a counter-claim, and if it was in excess of the plaintiff's demand, as in the case at bar, could thereupon disallow plaintiff's claim. —*Gordon* v. *Bruner*, 49 Mo. 570; *Hay* v. *Short*, 49 Mo. 139; *McAdow* v. *Ross*, 53 Mo. 199; *Empire Transp. Co.* v. *Boggiano*, 52 Mo. 294; *Life Assn. of America* v. *Cravens*, 60 Mo. 388.

Broadhead, Slayback & Haeussler, for the respondent: A claim for unliquidated damages cannot be the

subject of a set-off, and especially not in the case as made, but must be wholly disregarded. — *Johnson* v. *Jones*, 16 Mo. 494; *Mahan* v. *Ross*, 18 Mo. 121; *Pratt* v. *Jenkins*, 18 Mo. 158; *Baker* v. *Corning*, 19 Mo. 125; *May* v. *Kellon*, 1 Mo. 381; *Hembrock* v. *Stark*, 53 Mo. 588; *Mc-Adow* v. *Ross*, 53 Mo. 199; *Zelle* v. *German Savings Instn.*, 4 Mo. App. 401.

THOMPSON, J., delivered the opinion of the court.

On May 22, 1879, the Broadway Savings Bank suspended payment, and thereafter the defendant became its assignee, under the statute relating to assignments. At the time of its suspension J. Philip Krieger, Jr., was, and had been since its organization. in 1869, its cashier. When the bank suspended there was standing to the credit of Krieger, Jr., as a depositor, on the books of the bank, the sum of $2,618.01. On the 28th of May, six days after the bank had suspended, Krieger assigned this indebtedness to the plaintiffs. The plaintiffs preferred a claim for the amount before the assignee, the present defendant, who disallowed the same, and the plaintiffs appealed to the circuit court.

In the circuit court the defendant offered to prove by way of set-off that Krieger, the plaintiffs' assignor, before the assignment of the claim to the plaintiffs, while acting as cashier of the bank, had, without the knowledge and consent of the directors of the bank, allowed one Goldsoll to overdraw his current account as a depositor of the bank, to the amount of $3,000, whereby the bank had sustained a loss of that amount. The plaintiffs admitted that exactly $3,000 went out of the bank on a worthless piece of paper, that Krieger had allowed Goldsoll to overdraw his account to the amount of $3,000, and that the bank had thereby lost $3,000. But the plaintiffs, nevertheless, objected that the court could not receive and consider

this testimony, which objection the court sustained, and the propriety of this ruling is the only question before us.

The question involves the construction of the second branch of the statute relating to counter-claims. The statute (Rev. Stats., sect. 3522), referring to the preceding section, which provides that an answer may consist of any new matter constituting a defence or counter-claim, reads as follows: "The counter-claim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in an action, and arising out of one of the following causes of action: * * * *Second.* In an action arising on contract any other cause of action arising also on contract and existing at the commencement of the action."

The question, then, is, whether the cause of action which a bank has against its cashier for wrongfully permitting a customer to overdraw his account, whereby the bank has lost the amount of the overdraft, is a cause of action arising on contract within the meaning of this statute. Our first impression was that it is not; but after further reflection, and after considering the decision of the supreme court in the case of the *Empire Transportation Company* v. *Boggiano* (52 Mo. 294), we have come to a different conclusion. In that case a carrier brought an action against a shipper for freight. The shipper pleaded as a counter-claim that the carrier, by negligent delay in the transportation of fruit belonging to the shipper, had inflicted a loss upon him; and this was held a good counter-claim under the statute. In so holding, Adams, J., used the following language: "Although the plaintiff's liability in this case is for a tort growing out of the negligence and delay as a common carrier in the transportation of the defendant's goods, the cause of action, so far as the defendant is concerned, arises out of the contract of affreightment, and hence, in declaring at common law for the tort, the contract

was always alleged in the declaration by way of induce-
ment.   So, under our statute, the contract must be alleged
as the inducement to the cause of action and as showing the
parties' connection with the case.   In this light the contract
is looked to as the origin of the cause of action.   The statute
contemplated that where suit is founded on a cause of action
connected in any manner with a contract, a counter-claim
arising out of any other contract between the same parties
may be set up.   The old doctrine of set-offs has no analogy to
counter-claims of this nature under our statutes.   Under
the old system, set-offs sounding in damages for breaches of
contract were not allowed, but this objection cannot be
maintained in regard to counter-claims under our present
code of practice.   It is sufficient if the defendant's right to
the damages relied on as a counter-claim grows out of a
contract between him and the plaintiff.''

The reasoning of this case certainly goes much further
than what the case really decides.   At common law the lia-
bility of a common carrier for loss of goods might have
been enforced at the election of the owner or shipper, either
in an action of *trespass on the case,* founded upon the
common-law duty of the carrier, or in an action of *assumpsit*
founded upon the particular contract of affreightment.
Anciently the practice was to declare in case, but in later
times the practice of declaring in *assumpsit* succeeded ( *Dale*
v. *Hall,* 1 Wils. 281) ; but this practice did not supersede
the former practice (Bayley, J., in *Ansell* v. *Waterhouse,*
2·Chit. 1 ; *s. c.* 6 Man. & Sel. 385) ; and it is now well set-
tled in those jurisdictions where the common-law forms
of action are used that an action against a common carrier
may be either in tort or in contract.   Taney, C. J., in *Salt-
onstall* v. *Stockton,* Taney, 11 ; *Frink* v. *Potter,* 17 Ill.
416.   Where, as in the Boggiano case, the action is not for
a loss of goods founded upon the carrier's common-law lia-
bility, which is that of an insurer, but for the damages which
the owner has sustained through the carrier's failure to

deliver them with in a reasonable time, it may be doubted whether the action would not necessarily be an action upon the contract of affreightment. However this may be, the Boggiano case, having reference to what was actually decided, is not an authority for breaking down the rule which we are about to state, — a rule founded upon good precedents, and which has the advantage of being a definite and certain rule.

The rule is this : The test by which to determine whether a particular demand arises on contract, within the meaning of the statute of counter-claims, is this : If the demand could have been redressed at common law by any of the forms of . action which might be resorted to to recover damages for breaches of contract, then it is the proper subject of a counter-claim, under the provision of the statute we are considering ; otherwise not. If this defendant could have maintained at common law against Krieger, for the breach of contract in question, an action of covenant, debt, or *assumpsit*, then the counter-claim which is here set up must be sustained. But if he could not have enforced this liability of Krieger without resorting to one of the forms of action used at common law for the redress of injuries sounding in tort or to a bill in equity, then the demand is not the subject of a set-off.

Applying this test to the present case, it seems clear that the subject-matter of the set-off which the defendant attempted to set up was within the statute. Krieger's liability to the bank was a breach of duty originating in his contract of employment as cashier of the bank, the duty, the faithful performance of which he had assumed by contract. The existence of such a contract is not merely an inference deduced from the fact that he held the office of cashier of the bank. Evidence offered by the plaintiffs shows that there was an express contract ; that Krieger had given a bond to the bank, in which he had undertaken for the faithful performance of the duties of cashier ; and that a suit had been brought upon this bond and was pending at the time of the hearing

of this case in the circuit court.   That the negligence or fraud of the cashier of a bank in permitting a customer to overdraw his account is a breach of such a bond, was laid down by this court in the case of the *Market Street Bank* v. *Stumpe* (2 Mo. App. 545).   It appears, therefore, that the matter set up by the defendant as a counter-claim was a matter which involved the breach of an express contract entered into between Krieger and the bank.   It was, therefore, in a strict sense, a matter arising upon contract within the meaning of the second subdivision of the statute relating to counter-claims.   Rev.Stats., sect. 3522.   It follows that the court erred in rejecting the evidence of this counter-claim tendered by the defendant.

Three questions have been raised relating to procedure : 1. The fact that a suit is pending on the bond of Krieger embracing the liability involved in this counter-claim, is no ground for rejecting the counter-claim.   It is the ordinary case of a creditor having concurrent remedies, involving different securities, against his debtor ; in which case it is well settled that he may pursue all his remedies at the same time.   *In re Life Association of America.*

2. It is not a good objection that the counter-claim could not be entertained by the circuit court because the transcript of the assignee did not show that it had been set up before him.   It is true that the statute relating to assignments provides that appeals from an assignee shall be taken, certified, and proceeded with in the same manner as appeals from judgments of justices of the peace (Rev. Stats., sect. 377), and that the circuit court shall proceed to hear and determine the same in the same manner as if the case were in said court by appeal from the judgment of a justice of the peace.   But it does not follow from this that it is necessary that a counter-claim should be pleaded before the assignee in order to become available on appeal in the circuit court. The statute relating to assignments does not require or con-

template anything in the nature of a formal statement of claim or counter-claim in the proving up of claims before an assignee. Such proceedings before him are informal and summary, and are intended to be so ; and, on appeal to the circuit court, everything which might have been pleaded in opposition to a claim before the assignee will be treated as having been pleaded just as in the case of an appeal from the judgment of the probate court allowing or rejecting a claim preferred against a decedent's estate. This is especially so in the case of an assignee, since he occupies the apparently inconsistent relations of judge, and in his capacity as representative of the other creditors and the common debtor of defendant.

3. On the other hand, we do not agree with the other view urged upon us by the learned counsel for the defendant, that the power given the assignee "to adjust and allow demands against the estate and effects of the assignor," (Rev. Stats., sect. 372), confers upon him any larger power in relation to counter-claims, than that given by the statute relating to that subject. The power to adjust is the power to adjust according to law ; and it would be absurd to suppose that it was intended to give to the unlearned men who may be selected as assignees of insolvent estates a larger power to deal with supposed equities than that given to the trained judges of the courts. On the contrary, the statute provides that "the assignee shall require such evidence, and no other, of the justice of such demands as is required to establish demands of a similar character in the circuit court in suits between the original parties to the contract. Rev. Stats., sect. 375.

The judgment of the circuit court is reversed and the cause remanded. All the judges concur.